IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BLUEGRASS, LLC.,

          Plaintiff,

v.                                                           CIVIL ACTION NO. 2:20-cv-00414

STATE AUTOMOBILE MUTUAL
INSURANCE COMPANY,

          Defendant.

MEMORANDUM OPINION AND ORDER

I have reviewed Plaintiff's Class Action Complaint [ECF No. 1], Defendant's Motion to Dismiss [ECF No. 17], the Memorandum in Support [ECF No. 18], the attached exhibits, Plaintiff's Opposition [ECF No. 26], and Defendant's Reply [ECF No. 27]. In addition, I have reviewed the supplemental authority filed by both parties during the pendency of the Motion to Dismiss [ECF Nos. 38, 39, 40, 44, 45]. For the reasons stated herein, the Court finds that Defendant's motion should be **GRANTED**.

I.     BACKGROUND

Plaintiff, Bluegrass, LLC ("Bluegrass") operates the Tricky Fish restaurant, Starlings restaurant, and the Bluegrass Kitchen in Charleston, West Virginia. Bluegrass purchased a commercial property insurance policy from Defendant State Automobile Mutual Insurance Company ("State Auto"). The Policy is attached to the First Amended Complaint as Exhibit A. The Policy was in effect at all relevant times and covered the three Bluegrass properties. Generally, the Policy insured the

Plaintiff in the event of a "direct physical loss of or damage" to a covered property, unless limited by an enumerated exclusion. The policy provides:

> **SECTION I – PROPERTY**
> **A: Coverage**
>> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

[Policy, ECF No.16, Ex. A]. In the event of a covered loss due to a direct loss or physical damage, the Policy includes Business Income coverage:

> **f. Business Income**
>> **(1) Business Income**
>> **(a)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.
>> . . .
>> **(b)** We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.

The Policy also provides that it will cover lost business income sustained by the insured when a civil authority prohibits access to the property following a covered loss:

> **i. Civil Authority**
>> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and

2

>  necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>> **(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>> **(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property

On March 16, 2020, the Governor of West Virginia declared a state of emergency related to the novel coronavirus, or COVID-19, pandemic. On March 23, 2020, the Governor issued an Executive Order requiring all non-essential businesses to cease all activities beyond minimum basic operations to maintain inventory, process payroll, etc. effective at 8:00 p.m., on March 24, 2020. As a result of the orders governing Bluegrass, the covered property of Tricky Fish closed to the public on March 16, 2020 and reopened on May 28, 2020. The covered property of Bluegrass Kitchen went on a modified schedule ("take out only") on March 16, 2020 and then ceased all operations on May 16, 2020. The covered property of Starlings went on a modified schedule ("take out only") to the public on March 16, 2020 and then resumed normal operations on May 28, 2020. [ECF No. 16 at p. 43].

Bluegrass timely submitted a claim for the loss of business income during the period of modified operations at each covered property. State Auto denied the claim. [ECF No 16, ex. B]. State Auto's position in its denial letter is that the health and

safety restrictions that closed non-essential businesses do not constitute a "direct physical loss or damage" and that certain exclusions for governmental ordered loss of use and viral outbreaks bar coverage. [ECF No. 12 at 17–18].

Bluegrass filed an Amended Complaint on its own behalf and on behalf of a putative class of similarly situated business owners. [ECF No. 16]. Bluegrass seeks a declaration that the policy covers the business losses sustained and damages for breach of contract. State Auto moves to dismiss. In addition to its argument that the sustained losses are not "direct physical loss or damage," State Auto maintains that business income coverage under Policy section 5.f does not apply when suspended operations "precede the claimed property loss and when no direct physical loss at the described premises is alleged;" [ECF No. 18 at 10] and that the civil authority provisions do not work to provide coverage in the absence of a "prohibition of access" or direct physical loss or damage to the property. *Id.* at 17.

Bluegrass responds that a direct physical loss does not require any physical alteration, destruction, or damage to the covered property and that the deprivation of use can constitute a physical loss. [ECF No. 26 at 3–8]. Bluegrass also argues that State Auto has not met its burden of demonstrating that the policy exclusions apply in these circumstances. *Id.* at 13–16. In the alternative, Bluegrass argues that the pervasive and dangerous presence of COVID-19 at its business properties caused a dangerous condition that created a physical loss by rendering the covered properties unusable.

## II. STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

### III. DISCUSSION

#### a. *Class Certification*

The Federal Rules of Civil Procedure require specific conditions to be met if a lawsuit is to proceed as a class action. (See Rule 23). Rule 23(a) contains four prerequisites, commonly referred to as the requirements of numerosity, commonality, typicality, and adequacy of representation. *Gunnells v. Healthplan Servs., Inc.* 348 F.3d 417, 459 (4th Cir. 2003) (citing Fed. R. Civ. P. 23(a)). In addition, a class must be of one of three "Types of Class Actions" defined within Rule 23(b)(3). Courts and commentators have noted that the allegation of a class action carries serious consequences. 7B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1798 (2008) (citing Philadelphia Elec. Co. v. Anaconda Am. Brass Co., 42 F.R.D. 324, 328 (D.C. Pa. 1967)). As such, "the pleader must set forth sufficient allegations to show that the four requirements set forth in subdivision (a) are satisfied and that the action falls within one of the three categories described in subdivision (b)." *Id.* The United States Court of Appeals for the Fourth Circuit has noted that although the Court is permitted to look outside the complaint for purposes of class certification, the pleadings themselves are important for determining the scope of the proposed class and whether certification is appropriate. *See Smith v. Pennington*, 352 F.3d 884, 893 (4th Cir. 2003)("[W]e usually look to the complaint to determine the scope of the plaintiff's asserted class for tolling purposes."); *see also*, *Poindexter v. Teubert,* 462 F.2d 1096, 1097 (4th Cir. 1972) (examining plaintiffs' complaint to determine if class requirements were met).

Plaintiff here has not included any allegations in its complaint which would support the class certification requirements of Rule 23 beyond the bare recitals of the elements: numerosity, commonality, typicality, and adequacy of representation. Furthermore, Plaintiff has not yet moved the Court to certify the putative class. Therefore, I will only address the merits of Counts I, II and III as they apply to Plaintiff and not to any members of a proposed class. *See Uncork and Create, LLC*, no 2:20-cv-00401, 2020 U.S. Dist. LEXIS 204152 (S.D. W. Va., Nov. 2, 2020) (dismissing underlying claims without addressing class certification).

  b. *Direct Physical Loss or Damage*

There is little doubt that the construction of the plain language of the policy is at the heart of this coverage dispute. Defendant moves to dismiss, asserting that the factual allegations do not establish that Plaintiff is entitled to relief. Defendant argues that physical loss or physical damage to the covered property is a prerequisite to coverage, and closure of a business due to the threat posed by a virus does not constitute physical loss or damage.

Under West Virginia law, the scope of coverage provided by an insurance contract, absent factual disputes, is a question of law. Syl. Pt. 1, *Cherrington v. Erie Ins. Prop. & Cas. Co.*, 745 S.E.2d 508, 511 (W. Va. 2013) (quoting Syl. Pt. 1, *Tennant v. Smallwood*, 568 S.E.2d 10 (W. Va. 2002)). "Language in an insurance policy should be given its plain, ordinary meaning." *Id.* at Syl. Pt. 8 (quoting Syl. Pt. 1, *Soliva v. Shand, Morahan and Co.*, 345 S.E.2d 33 (1988)). Clear and unambiguous provisions "are not subject to judicial construction or interpretation." *Id.* at Syl. Pt. 9. "Where

the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated." *Id.* at Syl. Pt. 11 (quoting Syl. Pt. 5, *National Mutual Insurance Co. v. McMahon and Sons, Inc.*, 356 S.E.2d 488 (W. Va. 1987)). Further, "ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syl. Pt. 3, *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 3 (W. Va. 1998) (quoting Syl. Pt. 4, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 356 S.E.2d 488 (W. Va. 1987)).

The policy in this case does not define "physical loss of or damage to" the covered businesses. However, many courts have considered the issue in light of COVID-19 related executive orders and have held that a direct physical loss or harm, in a commercial casualty policy, requires some type of tangible damage to the covered property. *See, e.g., Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20 CV 2160, 2020 U.S. Dist. LEXIS 171979, *6-7 (N.D. Ill., Sept. 21, 2020) ("The critical policy language here—"direct physical loss"—unambiguously requires some form of actual, physical damage to the insured premises to trigger coverage. The words "direct" and "physical," which modify the word "loss," ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure.") *Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 C 3311 (S.D.N.Y. 2020) (denying a motion for preliminary injunction because the coronavirus does not cause direct physical loss, therefore no coverage was required;

the coronavirus "damages lungs. It doesn't damage printing presses"); *Diesel Barbershop, LLC v. State Farm Lloyds*, --- F. Supp. 3d ---, 2020 U.S. Dist. LEXIS 147276, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13, 2020) (granting a motion to dismiss because the coronavirus did not cause a direct physical loss, and "the loss needs to have been a 'distinct, demonstrable physical alteration of the property.'"); *Rose's 1, LLC v. Erie Ins. Exch.,* No. 2020 CA 002424 B, 2020 D.C. Super. LEXIS 10, 2020 WL 4589206, at *5 (D.C. Super. Aug. 6, 2020) (granting summary judgment for insurer on restaurant's claims of lost business caused by coronavirus closure orders because there was no direct physical loss to property).

Bluegrass cites a case in which the Supreme Court of Appeals of West Virginia considered whether homes rendered too dangerous for habitation by a rockfall and imminent risk of additional rockfalls had suffered "physical loss" covered by an insurance policy. *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 17 (W. Va. 1998). The rockfall impacted multiple neighboring homes, including a home that had no direct damage but was exposed to likely future rockfalls, requiring evacuation and utility disconnections. *Id.* at 5. The court considered similar cases from other jurisdictions and concluded that direct physical loss "may exist in the absence of structural damage to the insured property," given that the homes all "became unsafe for habitation, and therefore suffered real damage when it became clear that rocks and boulders could come crashing down at any time." *Id.* at 17.

As in the case at bar, the plaintiff in *Uncork and Create, LLC v. Cincinnati Insurance Company,* no. 2:20-cv-00401, 2020 U.S. DIST LEXIS 204152 (S.D. W. Va.

Nov. 2, 2020), also argued that the shutdown orders created a physical loss and that the situation is comparable to the possible rockfalls *Murray*. Judge Berger rejected that argument and adopted the approach of the majority of federal courts that have been presented with the issue:

> The majority of courts to address the issue, however, have found that COVID-19 and governmental orders closing businesses to slow the spread of the virus do not cause physical damage or physical loss to insured property. . . . A federal district court in Florida . . . reasoned that actual, physical, or tangible alteration to a property was required, not "merely . . . economic losses." *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615-CIV, 2020 WL 5051581, at *8 (S.D. Fla. Aug. 26, 2020) (also detailing the context provided by other provisions similar to those in the instant Policy, allowing for business interruption losses during a period of repair and restoration, that clarify that physical damages requiring repair are necessary). The federal District Court for the Eastern District of Texas likewise found a demonstrable physical alteration to the property necessary to establish a physical loss. *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13, 2020) (also finding that a virus exclusion would preclude coverage). The federal District Court for the Northern District of California reasoned that, although dispossession may sometimes constitute a "loss" without physical alteration of the property, California's Stay at Home orders temporarily prohibiting the plaintiff business from operating did not constitute the type of permanent or unrecoverable loss necessary for coverage. *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-CV-03213-JST, 2020 WL 5525171, at *4 (N.D. Cal. Sept. 14, 2020). The court also noted surrounding provisions concerning restoration, repair, and replacement of the property that bolstered its finding that coverage is inapplicable to COVID-19 and the Stay-at-Home orders. *Id.* An opinion from the Northern District of Illinois provides a helpful summation: "In essence, plaintiff seeks insurance coverage for financial losses as a result of the closure orders. The coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property. Consequently, plaintiff has failed to plead a direct physical loss—a prerequisite for coverage." *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20-CV-2160, 2020 WL 5630465, at *3 (N.D. Ill. Sept. 21, 2020).

2020 U.S. DIST LEXIS, at *10–12.

A recent opinion in the Eastern District of Virginia is a notable outlier. *See Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, 2020 U.S. Dist. LEXIS 231935, *10, --- F. Supp. 3d ---, 2020 WL 7249624. In that case, Judge Jackson held that a wide spectrum of interpretations of "direct physical loss" in Virginia case law created an ambiguity in the business insurance policy terms. *Id.* at *27 ("Therefore, given the spectrum of accepted interpretations, the Court interprets the phrase 'direct physical loss' in the Policy in this case most favorably to the insured to grant more coverage.").

I find no such spectrum of interpretation in West Virginia law and therefore there is no such ambiguity in this case. West Virginia law requires me to give the language in an insurance contract its plain and ordinary meaning. *Cherrington v. Erie Ins. Prop. & Cas. Co.*, 745 S.E.2d 508, 511 (quoting Syl. Pt. 1, *Soliva v. Shand, Morahan and Co., Inc.*, 345 S.E.2d 33 (1988)). Here, there has not been a direct loss to the property. The pleadings are devoid of any allegation that there has been a damage or alteration to the covered properties or even a *threat* of damage or alteration such was present from the rockfalls in *Murray*. While I am sympathetic to the plight of small businesses affected by the COVID-19 pandemic, I am unable to find that a regulatory shutdown order is a "physical loss or damage" as contemplated by the plain language of the parties' contract.

I am also unpersuaded by Plaintiff's alternative argument that the presence of COVID-19 at the covered properties created an altered physical condition that would trigger coverage under the policy. To find that a physical loss or damage has taken

place at the covered Bluegrass properties under these conditions would be to ignore the reality that many restaurants and cafes have continued to operate during the pandemic. "COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant. Thus, even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property." *Uncork & Create*, 2020 U.S. DIST LEXIS at *13.

Furthermore, coverage for Bluegrass is not triggered by the policy's Civil Authority provision. The Policy provides:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
> **(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
> **(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property."

[ECF No. 16, Ex. A at section 5.i]. Under the plain language of this provision, physical damage to the property and action by the state to restrict access are clearly necessary conditions precedent to coverage. In order to be covered by this provision, Bluegrass would need to show a nexus between physical property damage and the state's

actions. *See, Dickie Brennan & Co. v. Lexington Ins. Co.,* 636 F.3d 683, 686-687, (5th Cir. 2011) ("The general rule is that '[c]ivil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property.' Although it does not expressly address the proximity issue, the . . . policy requires proof of a causal link between prior damage and civil authority action."). Here, I have already found that no physical damage has taken place nor can I find that a civil authority barred Bluegrass's access to the "area immediately surrounding" any damaged property. The required nexus does not exist. Bluegrass's properties were able to operate on a modified, take out only basis and the executive orders contemplated access to the property for administerial functions in the early days of the pandemic.

    c. *Policy Exclusions*

State Auto also argues that explicit coverage exclusions for viral infections and government ordered loss of use found within the policy preclude Plaintiff's recovery. [ECF No. 27 at 16]. Having found that coverage has not been triggered by a direct physical loss or damage, I need not analyze whether State Auto properly invoked coverage exclusions for damage caused by viral infections or government ordered loss of use when denying coverage to Bluegrass.

## IV. CONCLUSION

The Court **ORDERS** that the Defendant's Motion to Dismiss Plaintiff's Complaint [ECF No. 17] is **GRANTED** and that this matter be **DISMISSED**. The Court further **ORDERS** that any pending motions be **TERMINATED AS MOOT**.

ENTER: January 5, 2021

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE